23-1081. Good morning, Your Honors. My name is Chris Sprigman. I'm here on behalf of appellant Mason Rothschild. Your Honors, I want to start by calling your attention to the transcript of a post-trial hearing in this case. A motions panel of this court granted our motion to supplement the record to include the hearing, which was held to determine whether Mason Rothschild would be allowed to give his permission to a museum in Stockholm, Sweden, to display his Metaburken's artworks as part of an exhibit on Andy Warhol's business art and the present-day artists that have been influenced by it. The hearing transcript is quite a read. In it, the district judge asked witness Blake Gopnik, author of a respected Warhol biography and curator of that Stockholm exhibit, whether anyone ever thought that Andy Warhol was trying to confuse people with his famous Campbell's soup cans. Gopnik replied that at the time, some art critics did feel something like that was going on. One of the interesting things about Andy Warhol's business art, Gopnik says, is that it caused controversy and confusion about whether in fact he was making art or whether he was doing business. In fact, Warhol did not have Campbell's Soup Company permission. So imagine that Andy Warhol had been put through discovery and then a jury trial over whether he intended to fool consumers into believing that the soup cans were authorized or sponsored or approved or licensed by the Campbell's Soup Company. Now, Rothschild's Metaburken's are, like those soup cans, static, two-dimensional images. They're paintings, although they're digital rather than paint on canvas. Rothschild used some piece of technology called an NFT to authenticate his artworks. Each painting came with a digital certificate. Aren't the circumstances different in that here there was substantial evidence presented that he was trying to take advantage of Hermes' goodwill? Judge Schindler was not substantial evidence, but... Statements that he made himself? Judge Schindler was statements. Never did he make a statement that he was trying to fool consumers. He made statements always to the public indicating that he was the author and that Hermes never suggested Hermes had anything to do with this. But, Judge Schindler, antecedent to that question, the real question here is whether this court's decision in Rogers v. Grimaldi applies. This court's decision in Rogers v. Grimaldi balances Lanham Act trademark rights and First Amendment rights by asking whether, A, the use of the mark is relevant. As you know, I'm familiar with it. Yes, Your Honor. In the Jack Daniels case, it held that Rogers does not apply where a defendant is using a trademark as a source identifier. Isn't there substantial evidence here that Rothschild was indeed using the mark as a source identifier? No, Your Honor, for two reasons. First, whether Rothschild is using the mark as a source identifier is a question of law, not a question of fact. And we know that because the Supreme... How is that a question of law? You've got to look at how it's being used, what's being said, the circumstances. Why isn't it a factual question, at least in part? It's not a factual question, Your Honor, because the Supreme Court said it wasn't. The Supreme Court said that Rogers is a shortcut to dismissal. For Rogers to function as a shortcut to dismissal, Your Honor, trademark use has to be a question of law. It has to be something that a district court could decide on a motion to dismiss or a motion for summary judgment. If it's not, then Rogers is not a shortcut to dismissal. It's a long, winding road to a jury verdict. More than that, Your Honor, the Supreme Court in Jack Daniels cites four cases that it says are proper applications of Rogers. First is Rogers itself, where the First Amendment protected the defendant's use of Ginger Rogers' name in the title and content of the movie Ginger and Fred. Second, Mattel v. MCA, where a rock band used Mattel's Barbie mark in the title and lyrics of their Barbie Girl song. Third, University of Alabama v. New Life Art. Artist Daniel Moore painted a series of photorealistic artworks featuring the university's trademarked uniforms. Fourth, Louis Vuitton v. Warner Brothers, where a movie featured a scene with a knockoff Vuitton bag referred to by name. Now, in all these cases, Your Honor, the courts did not have factual hearings to determine whether there was a trademark use, and the Supreme Court didn't think that they should. The Supreme Court said that those were not trademark uses, which suggests to me, Your Honor, that the distinction the Supreme Court is making is a legal one. The distinction would be... How is the use here different from the use of the marks in the Vans case? Yes, Your Honor. In the Vans case, the district court found, and it was a finding to which you deferred, that the use of the mark there was the use of the mark in a product, not an artwork. A factual finding? That was a factual finding that this was a product and not an artwork. Here, Your Honor, we have no question that this is an artwork. This is a static two-dimensional image. It has no use. Hermes tries to mischaracterize the Meadowbrookens as digital goods, but that's a term that Hermes has made up. It has no legal meaning. It's based on the idea that the Meadowbrookens have some use, and Hermes continues to insist that Meadowbrookens are usable or wearable in digital metaverse environments. But their own expert witness, Your Honor, Kevin Mintzer, admitted to trial that this was untrue. The sites are on page six of our reply brief. Again, Meadowbrookens are static two-dimensional images. They're no more digital goods than Daniel Moore's University of Alabama football paintings would be digital goods had Moore released them online rather than on canvas. Or Warhol's Campbell Soup cans would be if he were alive and released them as NFTs in 2021. So this case seems to me in some ways to be very confusing because the district judge at one point in interpreting Rogers, and of course we didn't yet have the Supreme Court opinion in the Jack Daniels case when this case was adjudicated, the district court was interpreting Rogers. And at one point in deciding the motion for summary judgment against your client, the district judge was influenced by the Louis Vuitton case in which some remarks were made actually on a different subject, on the subject of artistic expression, to the district judge who got the notion that crucial to the decision of this case was intent to deceive. And then in reaching his instructions to the jury, the court made them entirely about intent to deceive. Not entirely, but it was about likelihood of deception and intention to deceive and put with a great emphasis on intention to deceive. And that's how the case was put to the jury and how the jury decided. But intent to deceive is simply not a part of the Rogers test. The Rogers test has two elements, whether there is artistic relevance and whether, and the other element is whether there was explicit, misleading, and the word explicit doesn't appear anywhere in the district court's instructions to the jury, although he talks about likelihood of mistake. There's no reference to explicit misleading. So the case presented to the jury and the decision of the case on the summary judgment issue simply wasn't about the applicability of Rogers because the court was using a standard which is decidedly different from the Rogers standard. And I find that rather confusing about how we deal with this case. I mean, of course, it becomes perhaps of diminished relevance or perhaps no relevance at all if we were to conclude with respect to Jack Daniels that the Birkin mark was being used in Mehta Birkins as a source identifier. But I must say, speaking for myself, I don't see any indication that Mehta Birkins, which was the name, the title given by the defendant to this work of art, Mehta Birkins, clearly a reference to Birkin bags, unquestionably a reference to Birkin bags. But I don't see any way in which he's saying Mehta Birkins was saying, this is by me, Rothschild. It simply doesn't say that. It is true that in the accompanying text he identifies himself as the author of Mehta Birkins, but the issue is not whether the defendant identified himself as the author. The issue is whether the use of the Hermes mark, Birkin, in the word Mehta Birkins was used to identify the source of the Mehta Birkins artwork. And I don't see for the life of me how it was. Your Honor, a few things. And one of these will get to Judge Chin's question about question of law, question of fact. First of all, if the use of Mehta Birkins identifies source, then the use of Ginger and Fred identifies source. The use of Ginger, which is a mark. Ginger Rogers sold lingerie under that name. So it seems to me that Mehta Birkins was used in exactly the same way as Ginger and Fred. Yes, Your Honor. And the Supreme Court said that Rogers was a proper application of the Rogers test. This court gave the world Rogers. Rogers has stood the test of time. The Supreme Court did not purport to disturb it, didn't endorse it, but didn't also purport to disturb it. And I want to add a couple of things that I think get to Judge Chin. To me, it's even stronger than Ginger and Fred because Ginger is indeed the name by which Ginger Rogers was known. Ginger and Fred was widely known throughout the world as Ginger and Fred met Ginger Rogers and Fred Astaire. Correct, Your Honor. Sorry, I'm sorry. In this case, in contrast, you don't have Birkin. You have Mehta Birkin. And Mehta Birkin inevitably means something different from Birkin. And Mehta kind of means, I'm not sure exactly what it means, but it means something like a reference to the metaverse, an imaginary alternative world that takes place on the internet. And it's something different from Birkin. So I think that there's even less reference in Mehta Birkin than in Ginger and Fred. Your Honor, Blake Dopnik, who is meant to be the expert witness in this case who was excluded by the judge, would have testified that meta is a term often used in art. A meta painting is a painting about paintings. And a meta Birkin is a Birkin about Birkins. It's a painting about the subject of Birkins, which is what Mason Rothschild were doing. Now, Judge Chin asked... You said it's a Birkin about Birkin. You meant a painting about it. A painting about Birkins. And Judge Chin asked this question about fact, and a question of fact. In Rogers itself, the plaintiff introduces a survey that says 38% of a sample of 201 moviegoers thought that Ginger Rogers had something to do with the movie. The Second Circuit, this court, protects that art anyway. And the Supreme Court approves of Rogers as a proper use of the First Amendment protective test. And so, Your Honor, this isn't like a case... This isn't a case like Harley-Davidson v. Grottinelli, where the Supreme Court says that's not a proper application of Rogers because the dealer is using the Harley-Davidson mark to sell motorcycle repair services. Or like Judge LaValle's decision in the United We Stand America case, which, again, is approved by the Supreme Court as a case where this court properly did not apply Rogers. There, this court says that organization is providing political organizing services, and it's using that mark as an umbrella to identify the organization. It's like the Ninth Circuit's decision in Punchbowl, where the organization is using Punchbowl to identify the website and all of its services, not just some individual artwork or series of artworks. Now, Your Honor, I think to go a bit further on, you know, this argument, Hermes has very little to say in defense of the district court's failure to properly apply Rogers. The entirety of their argument can be found in one paragraph on page 30 of their brief. They cite Dupree v. Younger, and they argue that this court can't review the district court's orders on the motion to dismiss and the motion for summary judgment because trial, they say, supplants previous factual rulings. Again, Judge Chinn. But our appeal on the motion to dismiss and the motion for summary judgment is about a legal question. It's about the district court's application of the wrong legal test. The Supreme Court in Dupree was clear that pretrial legal rulings are reviewable on appeal. Again, this is the only time they are reviewable unless an extremely rare interlocutory appeal is granted. So the bottom line here, Your Honors, is that Rogers remains good law. It applies to this case. There were and are no genuine issues of material fact on either of the two Rogers questions. You can look at the complaint and see that the title, Medebergens, is artistically relevant to the art. It does what art titles do. It describes what the artwork shows. On the second prong, there was no explicitly misleading use of the mark. The witness, the corporate witness and general counsel for Hermes Isn't there an issue of fact as to that very question? Your Honor, explicit means overt. And this court gave examples. This court gave examples of what explicitly misleading uses would be. So in Rogers, this court says titles that would be explicitly misleading include NIMR on copyright for a copyright treatise not by NIMR. It's not just the title, is it? I mean, it's also using the shape of the bag, the configuration of the bag, comments like not your mother's Birkin. There were some other things as well. Your Honor, the shape of the bag cannot be explicitly misleading. The most it can do is cause people to draw an incorrect inference. And in Rogers, this court says an incorrect inference is not enough to override the First Amendment interest in free artistic expression. There has to be an overt, open misrepresentation. The use of the title Meta-Birkins is not like Jane Fonda's workout book for an exercise not like Jane Fonda. If Rothschild had titled his art Meta-Birkins by Hermes, Judge Chin, then I would say that would be an explicitly misleading use. But he did nothing like that. On the contrary. In Rogers, our court affirmed the grant of summary judgment implicitly saying this was not an issue of fact that had to be left to the jury. That's right, Your Honor. Summary judgment in favor of the defendant because there was no explicit misleading. That's right, Your Honor. It certainly was a strong basis for people to think that Ginger and Fred was about Ginger Rogers and Fred Astaire or had their authorization in some way and a lot of people did. A high percentage, I think, of surveys. But still, it was a question of law that the court adjudicated in favor of the defendant that there was no explicit misleading. Yes, Your Honor. And Judge, Your Honor, I want to, again, emphasize this word explicit which is in Rogers for a reason. Saying that something is not your mother's Birkin is not an explicit suggestion or an explicit statement that this is by Hermes. This is not that. This is something different is what that statement says. Stating to people that Mason Rothschild did that he was working on some kind of partnership with Hermes is not a statement that Hermes has anything to do with it. It's a statement that they don't yet but he would like them to. The other side says that he used Birkin alone. They make two sides for that. Those are both misleading, Your Honor. A1118. He uses Birkin before he launches and he's looking for a name. He's just using it to describe what the art is depicting. A65 and A95. On both A65 and A95, if you look at it, Birkin is used descriptively. That is to describe what the Meta-Birkins are portraying and it's used alongside both Meta-Birkins and with Rothschild identified as the author. So alone is a stretch, at very least. There are record sites on page 12 and 13 of our opening brief where Mason Rothschild claims authorship. He claims authorship on the website for Meta-Birkins. He claims authorship on Discord, which was the web platform on which he communicated with Meta-Birkins buyers. He claims authorship on the personal Instagram and Twitter accounts that he has. He claims authorship on the Meta-Birkins Twitter account. He claims authorship on the Meta-Birkins Instagram account. His publicist set out a press release at the launch of Meta-Birkins titled Artist Mason Rothschild Unleashes 100 Meta-Birkins NFTs During Art Files on Miami 2021. The first sentence of the press release states as a follow-up to his infamous baby Birkin NFT with collaborator Eric Ramirez, Los Angeles-based artist Mason Rothschild abused a new series. Despite all this, including the press release, some press outlets got it wrong. That's been known to happen. And Mason Rothschild and his press liaison, Ken Luke, corrected the ones that they could. Mason Rothschild follows up with the magazine La Faciel to correct and then follows up with them to correct it again when they screw up the correction. So this is all, you can see it, A280 to 289. Can I ask a question? Yes, sir. If you were to disagree with you that Rogers applies and that the instead appropriate framework is under Jack Daniels, then what's the argument? Your Honor, if Rogers doesn't apply here, I would ask you to consider very carefully whether you still have to do some work to accommodate First Amendment interests in artistic expression. Now, when this court decided Rogers...  So, when you say that, Jack Daniels seems to leave very little room for that. It says there are cases where Rogers applies, including Rogers, as you pointed out, and the other cases that you cited that are described by Justice Kagan. And then there's the case where Rogers doesn't apply and we look at a very specific question and the First Amendment issue seems to subside, seems to go by the wayside. Am I right or wrong? Your Honor, I think you're wrong about that. I think the Jack Daniels decision doesn't answer every question. It doesn't answer the question of what the court is supposed to do on remand. I agree it doesn't purport to try to answer every question, but it seems to go a long way. Your Honor... To the extent that there are continuing First Amendment protections, notwithstanding Jack Daniels, why wouldn't Instruction 14 deal with that? Your Honor, Instruction... Instruction 14, Your Honor, is, I think it's fair to say, pernicious in the following way. It asks the jury, after making a decision about whether Mason Rothschild committed trademark infringement, to make then a decision about whether he intended to fool people. Now, if that's the test, Your Honor... It seems to make even more sense now under Jack Daniels to do the Polaroid factors first. No?  If that's the test, Your Honor, then there is no First Amendment protection for artists. There is nothing left of Rogers. This court's Rogers decision was not disturbed by the Supreme Court in Jack Daniels. Jack Daniels lays out a number of cases where the defendant uses the mark in the title or the content of artwork. That's precisely what's happened here. There is no room between this case and Rogers, between this case and Barbie Girl, between this case and New Life Art, between this case and Louis Vuitton. They involve the same thing. So 14, Instruction 14, puts the burden on Hermes and it says that if Hermes proves that Rothschild actually intended to confuse, no First Amendment protection. How, what argument do you have left after that? I mean, the jury found, apparently, that Rothschild actually intended to confuse potential customers. Your Honor, intent to confuse potential customers is a relevant element of many trademark cases. So one of the Polaroid factors is adopting the mark with the intent to basically benefit from the goodwill of the mark through confusion. So when this court decided Rogers, it did not promote that element to the forefront. In fact, it structured a First Amendment test to ignore those elements, to bypass those elements. That, Your Honor, is the only way to protect, to avoid chilling protected speech. Now again, there's nothing in the Jack Daniels case that suggests that Rogers doesn't apply here. But if you don't apply Rogers, you should think about what you did, for example, in Twin Peaks, where Rogers didn't apply. Judge Newman decided Rogers. Judge Newman, a few years later, decided Twin Peaks. And then Rogers, he very presciently said in a footnote, this test does not apply to conflicts that are a title versus a title. Because there you have two offers. So a few years later in Twin Peaks, he faces precisely that problem. And what the court does is it fashions another test, somewhat less protective than Rogers, but nonetheless still protective of First Amendment rights. It makes plaintiffs show a particularly compelling level of confusion. Now there was no particularly compelling level of confusion here. There's a few anecdotal reports of press confusion. There's no evidence that a customer was ever confused. There's a survey that purports to show a little over 18% confusion, which is barely sufficient in a regular trademark case, if it's sufficient at all. And there are enormous methodological problems with that survey. I'll just give you one that is just a matter of common sense. The survey has a stimulus that asks survey participants who puts out the item pictured on this page. Now what's pictured on the page is the Metaburken image, the Metaburken painting, digital painting. The item could be interpreted as the painting, or the item could be interpreted as the handbag that is pictured in the painting. If a survey taker interpreted it that second way, they might, without being confused, say that Hermes makes this bag in the real world, that's the item, and so I'm going to answer Hermes. Yes, you are. Your Honor, the use of a mark, we think it's a categorical matter. The use of a mark in the title or the content of an artwork is a non-source identifying way. If you don't believe that, then it's hard to explain the result in Rogers, which the Jack Daniels Court affirms, or the result in Barbie Girl, where the artist uses Barbie in the title and content of the song, which the Jack Daniels Court says is a correct use. That is a non-trademark use, and therefore a correct use of Rogers. In Jack Daniels, with respect to the Barbie matter, it seemed to be so clear that that was a parody. So that was not using a mark in a source identifying way, clearly. So what does it mean in the context of this case to say that the mark at issue is a non-source identifying? Your Honor, drawing the line between parody and non-parody, I don't think tracks with Jack Daniels, because in Jack Daniels, the dog toy was certainly a parody. It was a parody of the Jack Daniels bottle. And the Court doesn't say that that's not a trademark use. That's a trademark use, Your Honor, first because the defendant there admits it's a trademark use, second because the defendant is using the mark, for example, on a hang tag, which is a classic way to use a mark on a consumer product. So Justice LaValle asks a question about the use of the term meta. Yes. Somehow differentiating this case from other cases where the mark is used in a source identifying way. Is there some... If I put meta in front of Loewe, meta Loewe, what does that mean? For my ability to protect my name. I mean, is meta enough? Maybe there's also a question for the other side. Your Honor, I wouldn't... This is with great respect for my colleague, of course. I think if you said fake Loewe, and it described a cartoon... There are a lot of fake Loewe's out there. It described a cartoon that was a cartoon of Loewe, and especially if it said fake Loewe, it showed a cartoon that showed Loewe in a particularly unflattering way. It would not communicate the notion that this was done with the approval of or with the sponsorship of Loewe. It's different from saying Loewe. Your Honor, I also want to refer you to the INTA brief, the International Trademark Association, filed an amicus brief in the Vans case, which I think is actually relevant. In the Vans case, INTA says... Keep in mind, INTA is an international group of trademark lawyers. These are not people who are hostile to trademark. And they say, if you want to know when and when not to apply Rogers, you look at the thing that the defendant has, and if you remove the expression from it, is there anything left? So if you remove the expression from the shoe in Vans, we have a shoe. If you remove the expression from Meta Berkins, you don't have anything. You have some useless computer code in the NFT. The NFT, which, by the way, does not use any of the plaintiff's marks, does not use the Hermes mark or the Berkin mark. It's labeled merely Meta. So if you follow that path for determining whether there's a trademark use, here, the line that you would draw is Mason Rothschild is using a mark to title only speech. He's not selling a consumer product. This isn't Meta Loewe, right? Someone sells a doll of Judge Loewe. Under the term Meta Loewe, then that would be a trademark use. But if someone drew a picture of you, Your Honor, this isn't a handbag. It's a picture of a handbag. This isn't a product about Judge Loewe. This is a drawing of Judge Loewe, hopefully a friendly one, and markets that under Meta Loewe, that, Your Honor, is an artwork, and the use of the mark to title the artwork would be precisely the thing we would want to apply Rogers to after Jack Daniels because the cases that Jack Daniels points to are doing precisely that. The cases that Jack Daniels points to as not a proper application of Rogers are doing something else. They involve dog toys. They involve dog perfume. They involve, why this focus on dogs, I don't know. We've kept you well past your time. Thank you, Your Honor. Is there a question? Well, yes, I was going to say it seems to me that the sponsors of literary or artistic works, like say books or movies, they have titles, and there's nothing about the title, if the title of the movie is The Godfather or Apocalypse Now, there's nothing about the title Apocalypse Now that tells you who it comes from. It doesn't say anything whatsoever about source. Nonetheless, the sponsors of that sort of merchandise claim trademark in the titles for a very good reason, that they don't want somebody else to be able to then be at liberty under law to use the same title. So they claim it as a trademark, although before they claimed it as a trademark, there's nothing about the title that gives the tiniest suggestion of where it comes from or who the source was. Ginger and Fred doesn't say that it comes from Fellini. But so here, I mean, there have been cases that have been where a decision has been based on the fact that the sponsor of the title claims it as a trademark. Here, there's no claiming of Meta Berkins as a trademark. There might be if somebody else comes along and makes their competing Meta Berkins, but as of now, there's no claim of trademark rights in Meta Berkins. There is not, Your Honor. Okay. Thank you very much. Thank you. We reserve some time for a follow-up. We'll hear from your friend on the other side. But you'll have to hold on one second as your audience leaves.  Good morning, Your Honors. Okay. Please proceed. Good morning, Your Honors. First, Judge LaValle, can you hear me? Yes, I can. Thank you. Thank you. My name is Mark D. LaQuill from the Baker and Hostetler Law Firm on behalf of Hermes International and Hermes of Paris. And with me at counsel table are my colleagues Jerry Ferguson, Francesca Rogo, and Kristen Shapiro. I want to go back to a question that Judge Chin asked at the beginning of Mr. Spriggan's argument that I think really goes to the core of this case. And that is, was the term Meta Berkins used as a source identifier within the meaning of Jack Daniels? I would direct this court to the decision in Vance. Jack Daniels has been incorporated, excuse me, has been considered by the Second Circuit already in Vance where the court found that the wavy baby shoe that the infringer was offering was used as a source identifier. The court looked at three factors to apply a clear legal test. And that clear legal test from Jack Daniels was whether or not they were, quote, trading on the goodwill of the trademark owner to market its own goods. End quote. That's on pages 156 through 57 of Jack Daniels. And that's also quoted in the Vance case. So you don't have to, as Mr. Spriggan suggested, make up a new legal test here. The legal test is in the case law. Vance looked at three factors in concluding that the mark was being used as a source identifier of the wavy baby shoe. First, it looked at the trade dress. The wavy baby shoe essentially took Vance's old school shoe and crunched it together so it weighed like something pushed without enough space. Here, Mr. Rothschild used not only the trade dress, he used a digital 3-D blueprint of an actual Birkin bag to create his Meta Birkin's image. That's at Appendix 1232. The second thing that the court in Vance looked at was the use of the mark to identify the products. Now, Mr. Spriggan said that we have made up the term digital goods for the Meta Birkins, and that's simply untrue. Mr. Rothschild himself proudly called the Meta Birkins quote-unquote digital commodities, and that's on A1134 of the record. Those aren't our words. It may be convenient to call them art in this courtroom today, but when there was no lawsuit pending, Mr. Rothschild understood they were quote-unquote digital commodities. And so how did Mr. Rothschild use the Birkin's mark to identify his products? He did it in his website. He did it on his Twitter account. He did it on his Instagram account. He did it in his Discord page. He did it in the marketing slogans Not Your Mother's Birkin, where he happened to also steal from Tiffany's. And he admitted, and this is at A1191 in the record, that it was the similarities with the Birkins that would drive attention to the bag. Interestingly enough, the record also shows what Mr. Rothschild's next project would be if he was successful with this. Metapotex. Metapotex Philippe watches. Then he was going to move to Meta Richard Mille. Metapotex Philippe. It's a watch that even our big law partners look at enviously, Your Honor. That's why I don't look at them. I think you need a yacht to own that watch. And third, the acknowledgement of the relationship in Vans. In Vans, Mischief proudly said that they were taking the dichotomy of the niche appeal and the elite appeal of the Vans old school shoe and making a play off of that. Mischief certainly believed what they did was art, and I'm in no position to judge it. But here, Mr. Rothschild said, and this is at A1134 of the record, he was attempting to take the illusion of affluence to the metaverse, the illusion of affluence with the Perkins bag to the metaverse, just like Mischief, in the Vans case, was trying to play on the dichotomy. Vans is very nearly a white horse case for this court, and I think makes the resolution of this dispute fairly simple in light of Jack Daniels. So it seems to me that if your argument prevails, the argument you were just making, that would essentially preclude, there could be no circumstance in which an artist makes a work of art which is premised on, whose basic premise is to comment on some famous thing in commerce, something that is trademarked and has a big place. So if somebody wanted to make a kind of a parody or some kind of whimsical or humorous or serious commentary that focused on where the artistic intention was, as in this case, to focus on a famous product in commerce, let's say the Cadillac or the Rolls-Royce or whatever it is, and the artist making the commentary uses the reference in the title of the work and builds into the title of his work, which is a commentary on the Rolls-Royce, and the title reflects that by using Rolls-Royce in the title. That's something that I think is excluded. It can no longer be done if your argument is accepted. I don't think that's correct, Your Honor, and I direct you to the Jack Daniels opinion itself. I mean, let's say that it is the work of art. Let's say it's a painting, and its purpose is to exalt the Rolls-Royce. It's a king. The Rolls-Royce is fantastic, and it paints it in a manner that makes the painted Rolls-Royce magnificent and gleaming and gorgeous, and the title is Rolls-Royce is the King. How does that work survive your case? I think the Jack Daniels case does attempt to grapple with this concern, Your Honor, and it does so in two ways. First, it distinguishes Rogers as well as the Barbie Girl cases and possibly the hypothetical that you've offered under the question of whether the use of the mark is to make a different statement, to express a different idea, and those are the cases where the Supreme Court thinks that the Rogers test may be applicable, and I think certainly the Supreme Court believed that trading on the goodwill as occurred here and using a mark to make a different expressive statement, as in Fred and Ginger. Would my artist be trading on the goodwill of Rolls-Royce when he makes a painting that's designed to glorify Rolls-Royce and the entitlement that Rolls-Royce is king? He may or may not. I think that's a difficult question, but I would then go to a different... How about the Campbell suitcase painting by Warhol? How would that fit in to your analysis? Would that be a problem today? I think we've spent some time thinking that that question might come up, Your Honor, and I don't think it's a problem. You don't think it's a problem? I don't think it's a problem, and I direct the Court to footnote 2 of Justice Kagan's decision in Jack Daniels, where she notes that no matter what, you still have to satisfy the plausibility pleading standards of Rule 8 in these cases where there's an alleged infringement. Rule 8 does a lot of work in a lot of different types of cases to sort out the situations where our common sense and our experience as individuals shows us that there is a claim or is not a claim, and in the case of something like the Andy Warhol soup can, I think you could go right through the Polaroid factors, and I don't think you would ever be able to allege a plausible claim for confusion. And here he was selling 100 of these images with 800 more in the works, right? I mean, that's a different kind of... It is a different... Repetition is part of what makes the source identifier, but there's another contextual... Warhol created a lot of Sam Campbell soup cans. He created 32 to be displayed in an individual display, at least at the outset. But setting... And the Kelly-Brown case in this Court makes clear that repetition is relevant to this, Your Honors. But setting even that aside, the context is king in a trademark case. The metaverse is somewhere that large luxury fashion brands are participating. Prada has added NFTs. Louis Vuitton has issued NFTs. The record is uncontroverted that before Mr. Rothschild attempted to beat Hermes into the metaverse, that Hermes had plans to issue NFTs, and it's a matter of... The Court could judicially recognize that they perceived a trademark allowance for use of Birkins in the metaverse. So this... I would say in Campbell's, Andy Warhol was putting paintings on a wall in a different context. Campbell's wasn't putting paintings on a wall. That wasn't one of the products they sell. Neither was Swanson's or neither was any Campbell's competitor at the time. Here, the metaverse is an active market for luxury products, and the way that the NFT, the Meadowbrook and NFT, worked really was as a digital commodity that's a luxury good, not as a piece of art. And that's shown by the fact that the highest sale prices for these Meadowbrook and NFTs were before the purchasers even knew what the image was. They were covered by a shroud. I'd use the analogy,  if you want the newest Corvettes, you can't just go to the dealer. You have to go, and you have to get your name on the list, and you'll get the next one in line, and you'll get what you get, and you won't be upset because it's a luxury product. That's really what was going on here. That's what Mr. Rothschild was aiming at. I wanted to also turn to a question, a comment, perhaps, that Judge Leval made earlier in the argument about potential confusement with the Rogers instruction in this case. You don't need to reach that issue because Mr. Rothschild's counsel has thoroughly waived any challenge to it. On 8.826, he said, I quote, but back to the instruction... 8.826? 8.826. And let me quote what Mr. Sprigman said in the charging conference. He said, but back to the instruction itself, we here at this table believe that the instruction gives the jury words they can use to actually apply the principle and we are satisfied with it. End quote. Now, that's an expressed waiver. Now, in their brief, Mr. Rothschild's counsel refers back to an earlier statement where Judge Rakoff said that objections were preserved. But no objection to this instruction could have been preserved because this was a brand new instruction that had been introduced in response to concerns that Mr. Rothschild's counsel had raised previously. Any challenge to that is waived. But I also think it's fair for the court to wonder, well, where did that instruction come from? And to steal a phrase from a judge friendly, it's not a legal low-end grip. Mr., excuse me, Judge Rakoff was very clear, actually, in his Rule 50 decision where that instruction came from. And I believe also footnote two, he noted it came from the Twin Peaks case. In Twin Peaks, and I think this is important because it goes... You're talking about Instruction 14? Correct. Instruction 14 is very clearly an attempt by Judge Rakoff to take the following language from the Twin Peaks case from page 1379, where this court said, quote, the question then is whether the title was misleading in the sense that it induces members of the public to believe the book was prepared or otherwise authorized by the senior mark holder. End quote. Although I've substituted the name of the senior mark holder. Twin Peaks is every bit as much law in this circuit as Rogers is. And in Twin Peaks, this court said, you should apply the Polaroid factors in the second prong of Rogers for what is or is not explicitly misleading. Now, in their brief, Mr. Rothschild's counsel suggests that that's just a titles versus titles issue and you don't really do that in other contexts. But the Second Circuit cited Judge Feinberg's opinion in the CliffsNotes case for that proposition. And the CliffsNotes case is most assuredly not a title versus title conflict. I think it's the black letter law in this circuit that in explicit misleadingness you consider the Polaroid factors. And what could be a more compelling... The argument... I mean, the word explicitly is in Rogers. It's not in the instruction. That's... That's correct. What do we do with that? I think you look at how this... how your prior decisions have applied the explicitly misleading prong of Rogers. And in both CliffsNotes and in Twin Peaks, this court says, you use the Polaroid factors. And this also disposes of this question of implicit versus objective versus intent. The Polaroid factors are both objective and subjective. There's no dispute about that. Subjectivity is always one of the things you need to be considering in explicit misleadingness. It's been considered by multiple district courts, including the A.M. General case. And... I'm sorry. Doesn't Jack Daniels seem to, or at least to me, change the issue of whether the use of the Polaroid factors is appropriate? I would say it makes the Polaroid factors even more important, Your Honor, because in Jack Daniels, the court said if there is a use of a mark, at least in part, as a source identifier. And this is important. At least in part. It can be something else. It can be artistic as well. But if it is at least in part as a source identifier, then you look at whether there's a likelihood of confusion. And for likelihood of confusion, the test in this circuit is the Polaroid factors. And there's a similar test in every other circuit that I'm aware of. In the Ninth Circuit, they called them the Skelcraft factors, and they're very similar. So they actually make the Polaroid factors, which, as Judge Chin noted, was the first part of the instruction, and rightly so. I guess my question is a little bit more precise. If you are engaged in a Rogers inquiry, which is what happened there, that's what the instruction was, then, as I understand it, Jack Daniels says, Justice Kagan says, Polaroid factors really no longer apply. But have I misread the decision? I think the decision is quite ambiguous on this, and I understand the portion of the decision you're going to. Justice Kagan says something like, if Rogers applies, then you can perhaps skip the likelihood of confusion analysis. That's correct. That's right. It's pretty clear. Well, I note that that's... Well, three points, Your Honor. First, it's dicta. Second, it's ambiguous. I think what Justice Kagan... You know, when the Supreme has their experts on dicta here, but first, Justice Kagan is very clear when she writes. And second, it's pretty definitive. Well, hear me out, Your Honor. Hear me out on the ambiguity, Your Honor. I think it's ambiguous whether Justice Kagan, particularly in light of the opinion as a whole, meant that you are... you are excused from ever considering the likelihood of confusion factors as opposed to whether she believes in that situation it would be very difficult to plausibly plead a claim for likelihood of confusion. But even if you don't buy that, I would go to a fundamental point of what I think the Supreme Court was really trying to do in Jack Daniels. And what it was trying to do is say, don't do what we did here. Don't have a trial on how much art is enough art, is too much art, and whether the type of art that excites the dealer in Soho because it may confuse customers is different than the type of art that excites a cocker spaniel and bad spaniels because they want to chew the chew toy. Go to the fundamental purpose of trademark law. Is it being used, at least in part, as a source identifier? Wouldn't you agree that Jack Daniels simply doesn't tell us, doesn't undertake to tell us, and doesn't tell us how you analyze a case when you determine that Rogers doesn't apply? It just doesn't deal with that. It doesn't tell us. I disagree, Your Honor. I think you go to what the Supreme Court said about a source identification. And I go to the quote I started with at pages 156 and 57 of the Jack Daniels decision where the court said where trademark is used at least in part as a source identifier such as when the defendant may be trading on the goodwill of the trademark owner to market its goods. End quote. That's the test. That's the test that was cited by this court in Vance. What is the test? Whether the infringer, alleged infringer, is trading on the goodwill of the trademark owner to market its own goods. Trading on the goodwill to market goods. That's what the Supreme Court said in Jack Daniels. To say that the Supreme Court told us exactly how to make the analysis if Jack Daniels ousts Rogers? That's what I'm telling you the test is. And that's also what this court said in Vance. And so I do believe that's the test. Would you instruct the jury with just those words and that would be the end of the charge? I don't know that you'd instruct the jury on just those words. In this case, I don't think you'd instruct the jury at all because I don't think there's any view of the record where you could say that Mr. Rothschild has not at least in part, you traded on the goodwill of Hermes' Burke and Mark to market its own goods. And would that be true in my painting of the Rolls-Royce as the Rolls-Royce's king? I think that probably would be true, Your Honor. But I think that your hypothetical would go out under a plausible likelihood of confusion analysis. I don't think that it would be possible to plead the Polaroid factors in that hypothetical. But I do think that that test would allow other types of... You're saying that my Rolls-Royce artist gets through okay? I think ultimately he gets... This artist doesn't, so why? Why is the result... Because the facts are very different for a single artist.  How? One, Mr. Rothschild was marketing what he called himself digital commodities or luxury goods. Second, he was marketing a large series of 100 with 900 more on the way.  he was entering in an area where luxury brands were active. Cadillac, in my knowledge, is not active at putting... selling prints of Cadillacs. But, luxury good brands are active in centering the metaverse. Those are the primary reasons why I think this is a very different situation by the context. Fourth, the intent matters. I think we shouldn't move away from intent and get away from it totally because Judge Rakoff in his decision after the trial on the Rule 50 motion essentially noted that Mr. Rothschild was acting as a swindler. And it was statements like Mr. Rothschild saying, I don't care if there's this confusion. If there's confusion, they can buy me off. I don't think that you realize how much you can get away with in art.  because I personally don't find any evidence that supports an intent to sow this confusion. He says they can buy me off if they don't like it. But what is it that is in his text that exhibits an intent to be claiming some kind of affiliation with Hermes? He says that he hopes to develop an affiliation with Hermes. He hopes that they will partner with him in some way. But that doesn't materialize. The text accompanying the work that's printed alongside the work speaks entirely in the voice of an outsider looking at Hermes and saying this is an homage to this icon that Hermes has created that is the mecca that is the outstanding thing in the world. It's speaking in the voice of a third person expressing admiration for what  has done in creating this icon. It doesn't speak in the voice of being Hermes itself. So I just don't see where I don't see where you find an effort to confuse people into thinking I do see how some people might become confused as was the case in Ginger and  But tell me what it is that he said that's trying to fool people into thinking that Hermes is sponsoring this. Sure. I'll go to multiple things. On A1191, Mr. Rothschild notes that without the recognition they are worthless, i.e., without making the images of his meta-Birkin similar enough to the Birkin's bag, they will have no value. He understood that consumers would be confused. That's a very fair inference from that. I don't see that as a fair inference at all. To understand his work requires an  of what the Birkin bag is. If somebody comes from a society in which they don't know Hermes and they don't know Birkin bags and they don't know the fashions of the  world, they will be baffled by it. They will have no idea what this is talking about. It will be of no interest to them. That may well be the case, but in every confusion case you have to have some type of  or there wouldn't be any confusion at all. I don't think that's questionably about the Birkin bag. He's making a statement about the Birkin bag. He understood this being about the Birkin bag. That's what it's all about. On appeal Mr. Rothschild wants to say that's what it's about, but his text at A1200 he says let's print some money in conjunction with creating the Birkin bag. Get the recognition together. Let's print some money. A1124. Luxury product, luxury text. He wants to make money from his art works. There's a difference between very few  artists who don't hope to make money from their art works. How does that mean he's hoping to make money by making people think this has the  of air mats. Again, I don't think people realize how much you can get away with in art by saying in the first place it's one thing to make money from your art. It's another thing to make art that you know is going to be recognized that you consider printing money to make it that sells for its highest value when no one sees it because of the association with air mats. When air mats is concerned, let them buy me off. It's like saying it would be a shame if anyone deluded it. I think with this evidence, I'd also point to the multiple lies he told his associates about whether he was working with air mats. I mean, Mr. Rothschild's testimony was not credible at trial, Your Honor. It was so incredible that in the opening statement his counsel had to admit that he doesn't tell the truth. When all of these factors, the lies to his colleagues, the luxury tax luxury product, the wanting to be bought off, recognizing his work was without the recognition, recognizing that people were buying it sight unseen with the perceived association with air mats. When all of that is taken together, it was entirely rational, and I would put to the  compelling for the jury to find that Mr. Rothschild was engaged in an attempt to confuse the public, and that's what he did. Is it not correct that he put in an express disclaimer of affiliation with air mats when air mats objected? That's the last refuse of every infringer, Your Honor. In Jack Daniels, there was a disclaimer. There's always the fine mark law. But wait a minute. You're misconstruing Jack Daniels because Jack Daniels didn't reach its decision based on the alleged infringers claiming an  with Jack Daniels. Jack Daniels depended on simply identifying the producer, the actual producer, as the source. Jack Daniels said if you use your mark in a manner that is source identifying,  yourself, correctly identifying yourself as a source, it said, you know, the purpose of trademarks is to  source. And if we have the same trademark where one owner of the trademark is identifying the original source and the other owner of  trademark        maker of the dog toy was trying to fool the public into thinking it came from Jack Daniels, it was depriving them of the test because they identified themselves as a source. Correctly identifying themselves as a source. I think that's a fair reading of Jack Daniels, but I would note that there was substantial evidence of actual confusion here, notwithstanding the disclaimer, and that the couturi was properly instructed on the Polaroid factors, and we have   dilution purposes, degree of similarity between the marks, they used the actual word, it's much closer than Jack Daniels, they actually said Berkins in the mark. Competitive proximity, they're both luxury products in an area where luxury brands play, and even if you disagree, there's no dispute on bridging the gap because Hermes had actual plans to enter the NFT market. Actual confusion, there was survey evidence of actual confusion, I know Mr. Sprigman doesn't like it, but he never filed a motion to exclude it under the mark. There was a finding of intent to confuse by the jury, there was also a  of bad faith for purposes of the cyber squatting. If you have no further questions,  honor. Thank you. Judge Lohier, first I want to state briefly that Justice Kagan was clear. She said that Rogers is a shortcut to dismissal. It's got to be  to dismissal if it's going to protect First Amendment rights. Vance, there's a good reason why you guys decide one case at a time.   They are speech. They are not goods like the shoes were found to be in  There's no dispute in this case. There were no allegations supporting any idea that they have a use. It sticks to that like glue but there is zero what. That gets to something else. If you look at Warhol's Campbell soup cans, he didn't paint Walmart soup  He painted Campbell soup cans because he's leveraging the power and good will to make an artistic statement. The same thing is happening here. Just like Warhol was saying to the public that these pieces of art are commodities, he was effacing the distinction between art and business. So, too, was Rothschild. What Rothschild was interested in was whether the meta-Burkins would have the same value in the metaverse that the Burkin does in the real world. That is to say, is the prestige of the  appeals to the consumer about the physical good or bad     there was artistic expression here, but at least in part, there is no trademark use here,  honor. In 1962,  Warhol made 32 paintings. In 1968, Warhol wanted to send a message that this was a mechanized industrial process. He made an addition of 250 copies of each of these screen prints and sold them. That is the portfolio number one. A new edition of screen prints sold in 250 of each. The point of this is Warhol is making a point about art and commerce being intertwined. This Mason Rothschild character is making a point about art and commerce being intertwined. In the project, if you see the way he sells these, you will see. He has people lined up to buy these. Everyone who buys one has to be on a white list.  speaking with them. They know what this is about.  no confusion. Many people said that about Campbell Soup Cans in 1962. This can hang on the wall, too, if you put a monitor on the  The important thing is that in the after market, Mason Rothschild art experiment produced an interesting result. That was that the image of the Birken bag is what people value. In the after market, these fetch as much as some Birken bag fetch. I couldn't understand why people would spend that kind of money to put their lipstick in. I think we see it the same. I'm not impressed by the argument that you made at the start of this, to say that the NFTs are not goods. I don't see that that matters because it does seem to me that if I'm fact quite different in my mind from these, if an artist put out an NFT in a manner that was designed to make it look to the public to make it look as if it had the sponsorship of the Hermes or Babe Ruth or whatever it is, if an NFT was made and it was being sold in a manner that explicitly misled as to I don't know if it has to explicitly mislead, but if it was designed to make people think that it had the sponsorship of their home baseball team or whatever it is, and sold on that basis, I don't think that your distinction is that it's not goods. It's a work of art that's only accessible through a  I don't see a difference. Your Honor, I want to make the limits of my distinction clear and also the purpose of my distinction. You're right that if someone puts out an artwork linked to an NFT and that artwork is explicitly saying this is promoted, this is sponsored by some celebrity, that would be an explicitly misleading use of the mark. That under Rogers would be actionable. The Lanham Act claim would pierce the First Amendment protection in that case. Your Honor, in Rogers, this court says that absent that kind of explicitly misleading use, even though, even though, and in Ginger and Fred, as you know, people in fact did make an  inference, even though people might make an  inference, that is not enough to override the First Amendment protection.    in artistic speech. Now, Your Honor, I understand that your example is meant to occupy some middle ground where no explicit statement is made but the statements are designed to lead people to make that incorrect inference. I would submit to you that the genius of Rogers, which Jack Daniels Court makes pretty clear to me, the genius of Rogers is that it realizes that you cannot have both an effective First Amendment test that protects artistic speech and doesn't chill artistic speech and catch every person with bad intent. You can't do both. As you pointed out, their evidence of Mason Rothschild's bad intent is scant to none. Mason Rothschild wanted to make money off his art. If you look at his text, he tells fibs about things that have nothing to do with his art and that's why counsel said early on. That is correct. There is no evidence of that. When he says, I am working on a deal with  that is not a statement that claims he has one. When he says, it's amazing what you can get away with in the style of an art, that's a confused statement taken out of context about copyright. It's somewhat true. You can get away     is, what if  determined that  does not apply? The framework is Jack Daniels. How do you prevail? If Rogers doesn't apply.  Much of the argument assumes that Jack Daniels tells you what to do if Rogers doesn't apply. Your first answer was,  difficult. What are   Give me the road map. You should find some way to protect first amendment rights. One way to do that is to make a plaintiff present particularly compelling evidence of  I would ask you not to do that. It's got to be significant. There has to be  delta where some courts will accept as little as 15 to 20 percent confusion. This is a real problem. Of course with respect to the example of the Rolls Royce, no one could plead confusion. I'm going to refer you to a social media reply to a comment that the jury made. In reply to a social media post, this    is what   There has to be some question of law that can be answered here along the lines that the Supreme Court suggests the answer in Rogers. Thank you. The record has expired. Thank